STATE of Iowa, Appellee,

v.

Bruce KEYS, Appellant.

No. 94–0460.

Court of Appeals of Iowa.

May 30, 1995.

Kermit L. Dunahoo of Dunahoo Law Firm, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Richard J. Bennett, Asst. Atty. Gen., Thomas J. Ferguson, County Atty., and D. Raymond Walton, Asst. County Atty., for appellee.

Heard by DONIELSON, C.J., and HAYDEN and SACKETT, JJ.

DONIELSON, Chief Judge.

Defendant Bruce Keys appeals his convictions for first-degree robbery and terrorism. He argues: 1) the trial court erred in allowing the prosecution to use a peremptory challenge against the only black member of the jury panel; 2) the trial court erred in overruling his motion for a mistrial; and 3) the trial court erred in overruling his motion to dismiss the second robbery count. We affirm.

## I. PEREMPTORY CHALLENGE.

The defendant is black and argues he was "unconstitutionally denied a fair

cross-section jury when the only black on the 24–member jury panel was stricken by the prosecution." The issue of race-based peremptory challenges was raised in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and *State v. Knox,* 464 N.W.2d 445 (Iowa 1990). Because this claim raises constitutional implications our review is de novo. *State v. Taft,* 506 N.W.2d 757, 762 (Iowa 1993). Since a trial court's findings of purposeful discrimination turn largely on an evaluation of credibility, we give those findings great deference. *Batson,* 476 U.S. at 98, n. 21, 106 S.Ct. at 1724, n. 21, 90 L.Ed.2d at 88–89, n. 21.

 In order to establish a prima facie case of discrimination in jury selection under *Batson,* a defendant must first show he is a member of a recognizable minority and the prosecutor used peremptory challenges to remove members of his race from the jury. *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87. Next, a defendant is entitled to rely on the fact peremptory challenges "permit those to discriminate who are of a mind to discriminate." *Id.* Finally, a defendant must show "that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Id.,* 476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87–88. The relevant circumstances include, but are not limited to, a pattern of strikes against black jurors as well as the prosecutor's questions and statements during voir dire. *Id.* Once the defendant makes the required prima facie showing, the State has the burden of articulating a clear, reasonably specific and race-neutral explanation for the peremptory challenge. *Id.,* 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88.

 The record in this case reflects the prosecution struck one black and two white members of the jury pool because they had previously been convicted of simple misdemeanors. When questioned about the peremptory strike of the black member of the jury panel, the assistant county attorney explained members of the jury panel who had criminal convictions were perceived to have negative attitudes toward law enforcement and the prosecution. The court found this to be a racially neutral explanation and it over-ruled the defendant's objection to the peremptory challenge.

 On appeal the defendant does not dispute the racial neutrality of the State's explanation for striking the black member of the jury panel. However, the defendant argues that where the effect of striking a black member of the jury panel is to leave a black defendant with an all-white jury, the court should have an affirmative duty to require the State to show it will incur actual prejudice if the black member is not stricken. The defendant cites no authority in support of this proposition, nor are we aware of any which would mandate imposition of such a requirement on our state's trial courts and prosecutors. *Batson* and *Knox* require only that the State's reasons be racially neutral. Trial and appellate courts have the discretion to examine the surrounding circumstances in assessing the credibility of the State's proffered reasons for its peremptory strikes.

We find the State's reason for striking the black member of the jury panel to have been racially neutral on its face and in application. The trial court did not err in overruling the defendant's objection to the peremptory challenge.

## II. MOTION FOR MISTRIAL.

 The defendant claims the trial court should have granted his motion for a mistrial. A trial court has broad discretion when ruling on a motion for a mistrial. *State v. Wade,* 467 N.W.2d 283, 285 (Iowa 1991). The defendant contends he was prejudiced by the testimony of a police officer who indicated he had run a criminal history check on the defendant in California. The defendant argues this testimony carried the damaging implication that he had a criminal history. He argues the prejudicial effect of this testimony was exacerbated by the testimony of an off-duty store clerk who allegedly indicated her store had been robbed a few days before the robbery for which the defendant was charged.

In explaining the defendant's use of an alias when he was apprehended, the testimony of a police officer alluded to the fact a criminal history check had been run on the

defendant in California. The record reflects this testimony was cut off before the officer made any statement as to whether or not the defendant actually had a record of criminal history in California or what that history involved.

▋ The jury was instructed to disregard the testimony of the off-duty clerk regarding a possible prior robbery of the convenience store the defendant was alleged to have robbed. Generally the striking of an improper response, and an instruction to the jury to disregard the response, will prevent prejudice. A defendant who asserts such actions were insufficient bears a heavy burden of demonstrating a clear abuse of discretion on the part of the trial court. *See State v. Brown,* 397 N.W.2d 689, 699 (Iowa 1986).

We find the testimony of the officer and off-duty clerk was properly handled and was not unfairly prejudicial to the defendant. Under these circumstances we find no abuse of discretion in the denial of the defendant's motion for a mistrial.

## III. SPEEDY TRIAL.

▋ The defendant claims the scheduling of the trial on the second robbery count was in violation of his right to a speedy trial, and the trial court erred in denying his motion to dismiss. Our scope of review for speedy trial issues under Iowa Rule of Criminal Procedure 27(2)(b) is for corrections of errors at law. *State v. Finn,* 469 N.W.2d 692, 693 (Iowa 1991). We recognize the trial court's discretion to refuse to dismiss within the limits of the exceptions to the speedy trial mandate. *See State v. Todd,* 468 N.W.2d 462, 470 (Iowa 1991). Thus, we ultimately look to whether the trial court abused its discretion. *Id.* To the extent the defendant raises a constitutional claim of a speedy trial violation, our review is de novo.

▋ The right to a speedy trial is guaranteed by the Sixth Amendment of the United States Constitution, as well as Article I, section ten of our Iowa Constitution, and is now solidified by our rules of criminal procedure. *State v. Olson,* 528 N.W.2d 651, 653 (Iowa App.1995). Rule 27(2)(b) requires that an accused be brought to trial within ninety days of indictment. The rule applies equally to charges brought by trial information.

*State v. Clark,* 351 N.W.2d 532, 534 (Iowa 1984). If trial is not commenced within the ninety-day period prescribed by the rule, the indictment or information must be dismissed unless the defendant has waived the speedy trial right, the delay is attributable to the defendant, or good cause exists for the delay. *State v. Hamilton,* 309 N.W.2d 471, 475 (Iowa 1981).

▋ We have consistently held the critical factor in the "good cause" analysis is the reason for the delay. *Olson,* at 654; *State v. Searcy,* 470 N.W.2d 46, 48 (Iowa App.1991). Other factors such as a the length of the delay, whether the defendant was prejudiced, and whether the defendant asserted his or her right to a speedy trial also bear on the inquiry when the reason for the delay is weak. *State v. Bond,* 340 N.W.2d 276, 279 (Iowa 1983); *State v. Petersen,* 288 N.W.2d 332, 335 (Iowa 1980). Thus, a comparatively weak reason for the delay may become sufficient to avoid dismissal if the delay is relatively short and does not prejudice the accused. *Olson,* 528 N.W.2d at 654; *Bond,* 340 N.W.2d at 279.

A review of the trial court record reveals the trial information was filed September 7, 1993. Counts I and III pertained to the robbery of a convenience store on August 25, 1993. Count II pertained to the separate robbery of another convenience store on August 26, 1993.

Pursuant to Iowa Rule of Criminal Procedure 27(2)(b), the ninety-day speedy trial deadline was December 6, 1993. The September 14, 1993, arraignment order scheduled trial on the terrorism and two robbery counts for November 9, 1993. This order also indicated the defendant was demanding, and not waiving, his right to a speedy trial.

A final pretrial conference was held on November 5, 1993. At that time the defendant orally moved for a three week continuance of the trial date. The State did not resist the motion and the trial was rescheduled for November 30, 1993. The order rescheduling the trial specifically stated the delay caused by the continuance would be "charged to the defendant for the purpose of speedy trial rights."

Six days before the November 30, trial date, the State filed a notice of its intent to

call an additional witness. Such notices are required to be given to the defendant at least ten days before the commencement of the trial. Iowa R.Crim.P. 18(2). The testimony of this additional witness pertained to the robbery allegations contained in Count II of the trial information.

The defendant objected to the State's motion to amend its minutes to add a witness, but the trial court granted the State's motion. The defendant then moved to sever Count II from the trial scheduled for November 30. The court granted the motion to sever. Trial proceeded and the defendant was convicted on both the Count I robbery and Count III terrorism charges.

The record does not reflect when the State moved to reschedule trial on the Count II robbery charge, but a court order was entered on January 21, 1994, setting a February 1, 1994, trial date on the second robbery count. The February 1, 1994, trial date was fifty-seven days after the December 6, 1993, speedy trial deadline.

The defendant filed a motion to dismiss which the State resisted. The trial court held a hearing on the motion and denied the dismissal. It concluded the trial delay was attributable to the defendant's request to sever the trial and the defendant had not been prejudiced by the delay.

■■■■■■ "Delay attributable to defendant may constitute statutory good cause prevent-ing the State from carrying out its obligation to bring him to trial." *State v. Donnell,* 239 N.W.2d 575, 579 (Iowa 1976). A defendant may not actively participate in events which delay his trial and then later take advantage of the delay to terminate the prosecution. *State v. Finn,* 469 N.W.2d 692, 694 (Iowa 1991).

■■■■ We agree with the trial court that the delay was attributable to the defendant. The defendant was not prepared to proceed to trial as scheduled on November 9, 1993, and he requested a three-week delay which necessitated the trial being rescheduled to a date only one week before the speedy trial deadline. It was upon the defendant's motion that the second robbery count was severed and not tried on November 30. Defendant's incarceration prior to the second trial was an inevitable result of his conviction on the first robbery charge and is not indicative of any prejudice resulting from the delay. The defendant offers no other evidence of alleged prejudice.

We conclude the delay in trial on Count II was attributable, in large part, to the defendant. The trial court acted properly in denying the defendant's motion to dismiss and we affirm.

**AFFIRMED.**